# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| STEWART SCHREIBER and KAREN SCHREIBER, Individually and On Behalf of All Others Similarly Situated, <br><br><br>Plaintiffs, <br><br>v. <br><br>TUPPERWARE BRANDS CORPORATION, PATRICIA A. STITZEL, CHRISTOPHER D. O'LEARY, CASSANDRA HARRIS, and MICHAEL POTESHMAN, <br><br><br>Defendants. | Case No. _____ <br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Stewart Schreiber and Karen Schreiber ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Tupperware Brands Corporation ("Tupperware" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Tupperware; and (c) review of other publicly available information concerning Tupperware.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Tupperware securities between January 30, 2019 and February 24, 2020, inclusive (the "Class Period"). Plaintiffs pursue claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Tupperware is a direct-to-consumer marketer of products sold around the world. Its brands include Tupperware, Avroy Shlain, Fuller, NaturCare, Nutrimetics, and Nuvo.

3. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about Tupperware's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) Tupperware lacked effective internal controls; (ii) accounting irregularities existed with respect to the Company's Fuller Mexico business; (iii) the foregoing issues would foreseeably necessitate an investigation that would cause Tupperware to be be unable to timely file its 2019 annual report; (iv) Tupperware would need relief from its $650 million Credit Agreement; (v) Tupperware

provided overvalued earnings per share ("EPS") guidance; and (vi) as a result of the above, Defendants' public statements were materially false and/or misleading at all relevant times.

4.      On February 24, 2020, the Company issued a press release announcing that the Company "will file a Form 12b-25 Notification of Late Filing with the Securities and Exchange Commission to provide a 15-calendar day extension within which to file its From 10-K for the fiscal year ended December 28, 2019."  The February 24, 2020 press release also announced for the first time that the Company is conducting "an investigation primarily into the accounting for accounts payable and accrued liabilities at its Fuller Mexico beauty business" and that "the Company is forecasting a need for relief concerning its existing leverage ratio covenant in its $650 million Credit Agreement dated March, 29, 2019."

5.      On this news, the Company's stock price fell $2.61 per share, or 45.63%, to close at $3.11 per share on February 25, 2020.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Defendant Tupperware's primary executive offices are located in this Judicial District and substantial acts in furtherance of the alleged fraud or the

effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

11.    Plaintiffs, as set forth in the accompanying Certifications, incorporated by reference herein, purchased Tupperware securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Tupperware operates as a direct-to-consumer marketer of various products across a range of brands and categories in Europe, Africa, the Middle East, Asia Pacific, North America, and South America.  The Company engages in the manufacture and sale of an array of products for consumers under the Tupperware brand name.  The Company also manufactures and distributes skin and hair care products, cosmetics, bath and body care, toiletries, fragrances, jewelry, and nutritional products under the Avroy, Shlain, Fuller, NaturCare, Nutrimetics, and Nuvo brands.

13.    Tupperware is incorporated in Delaware with its principal executive offices located at 14901 South Orange Blossom Trail, Orlando, Florida.  The Company's securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TUP."

14.    Defendant Patricia A. Stitzel ("Stitzel") served as the Chief Executive Officer ("CEO") and Lead Director of the Company during the Class Period until November 11, 2019.

15.     Defendant Christopher D. O'Leary ("O'Leary") has served as the Interim CEO of the Company since November 12, 2019.

16.     Defendant Michael Poteshman ("Poteshman") served as the Chief Financial Officer ("CFO") and Executive Vice President of the Company during the Class Period until March 31, 2019 and provided consulting services from March 31, 2019 to September 30, 2019.

17.     Defendant Cassandra Harris ("Harris") has served as the CFO and Executive Vice President of the Company since April 1, 2019.

18.     Defendants Stitzel, O'Leary, Poteshman, and Harris (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Tupperware is a direct-to-consumer marketer of products sold around the world. Its brands include Tupperware, Avroy Shlain, Fuller, NaturCare, Nutrimetics, and Nuvo.

## Materially False and Misleading
## Statements Issued During the Class Period

20.     The Class Period begins on January 30, 2019, when Tupperware issued a press release announcing its fourth quarter 2018 financial results providing a full-year 2019 guidance of $3.86 to $4.01 GAAP EPS (compared to $3.11 from full-year 2018).

21.     On February 26, 2019, Tupperware filed a Form 10-K for its fiscal year ended December 29, 2018 with the SEC, which provided the Company's financial results and was signed by Defendants Stitzel and Poteshman.   The February 26, 2019 Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Stitzel and Poteshman attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

22.     Regarding the Company's internal controls, the February 26, 2019 Form 10-K stated:

**Evaluation of Disclosure Controls and Procedures**

The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives.

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the disclosure controls and procedures were effective as of December 29, 2018.

**Management's Report on Internal Control Over Financial Reporting**

The Company's management is also responsible for establishing and maintaining adequate internal control over financial reporting as defined in Exchange Act Rule 13a-15(f). As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the Company's internal control over financial reporting based on the framework in Internal Control-Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's internal control over financial reporting was effective as of the end of the period covered by this report. The effectiveness of the Company's internal control over financial reporting as of December 29, 2018 has been audited by PricewaterhouseCoopers LLP, an independent registered certified public accounting firm, as stated in its report which is included herein.

**Changes in Internal Controls**

There have been no significant changes in the Company's internal control over financial reporting during the Company's fourth quarter that have materially affected or are reasonably likely to materially affect its internal control over financial reporting, as defined in Rule 13a-15(f) promulgated under the Securities Exchange Act of 1934, as amended.

23.    On April 24, 2019, Tupperware issued a press release announcing its second quarter 2019 financial results and providing a full-year 2019 guidance of $3.65 to $3.76 GAAP EPS (compared to $3.11 from full-year 2018).

24.    On May 2, 2019, Tupperware filed a Form 10-Q for the quarterly period ended March 30, 2019 with the SEC, which was signed by Defendant Harris and provided the Company's financial results.  The May 2, 2019 Form 10-Q contained signed certifications pursuant to SOX by Defendants Stitzel and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

25.    Regarding the Company's internal controls, the May 2, 2019 Form 10-Q stated:

**Evaluation of Disclosure Controls and Procedures**

The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives.

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the design and operation of the disclosure controls and procedures were effective.

**Changes in Internal Controls**

There have been no significant changes in the Company's internal control over financial reporting during the Company's first quarter that have materially affected or are reasonably likely to materially affect its internal control over financial reporting, as defined in Rule 13a-15(f) promulgated under the Securities Exchange Act of 1934, as amended ( the "Exchange Act").

26.    On July 24, 2019, Tupperware issued a press release announcing its second quarter 2019 results and providing full-year 2019 guidance of $2.94 to $3.09 GAAP EPS (compared to $3.11 from full-year 2018).

27.    On August 1, 2019, Tupperware filed a 10-Q for the quarterly period ended June 29, 2019 with the SEC which was signed by Defendant Harris and provided the Company's financial results.  The August 1, 2019 Form 10-Q contained signed certifications pursuant to SOX by Defendants Stitzel and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

28.     Regarding the Company's internal controls, the August 1, 2019 Form 10-Q stated:

**Evaluation of Disclosure Controls and Procedures**

The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives.

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the design and operation of the disclosure controls and procedures were effective.

**Changes in Internal Controls**

There have been no significant changes in the Company's internal control over financial reporting during the Company's second quarter that have materially affected or are reasonably likely to materially affect its internal control over financial reporting, as defined in Rule 13a-15(f) promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

29.     On October 30, 2019, Tupperware issued a press release announcing its third quarter 2019 results and providing full-year 2019 guidance of $1.93 to $1.99 GAAP EPS (compared to $3.11 from full-year 2018).

30.     On November 6, 2019, Tupperware filed a Form 10-Q for the quarterly period ended September 28, 2019 with the SEC, which was signed by Defendant Harris and provided the Company's financial results.  The November 6, 2019 Form 10-Q contained signed certifications pursuant to SOX by Defendants Stitzela and Harris attesting to the accuracy of financial reporting,

the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

31.     Regarding the Company's internal controls, the November 6, 2019 Form 10-Q stated:

**Evaluation of Disclosure Controls and Procedures**

The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives. Further, because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that misstatements due to error or fraud will not occur or that all control issues and instances of fraud, if any, within the company will be detected.

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the design and operation of the disclosure controls and procedures were effective.

**Changes in Internal Controls**

There have been no significant changes in the Company's internal control over financial reporting during the Company's third quarter that have materially affected or are reasonably likely to materially affect its internal control over financial reporting, as defined in Rule 13a-15(f) promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

32.     Regarding the Company's credit agreement, the November 6, 2019 Form 10-Q stated:

**Credit Agreement**

On March 29, 2019, the Company and its wholly owned subsidiaries Tupperware Nederland B.V., Administradora Dart, S. de R.L. de C.V., and Tupperware Brands Asia Pacific Pte. Ltd. (the "Subsidiary Borrowers"), amended and restated its multicurrency Credit Agreement, amended by Amendment No. 1 dated August 28, 2019 (so as amended, the "Credit Agreement"), with JPMorgan Chase Bank, N.A. as administrative agent (the "Administrative Agent"), swingline lender, joint lead arranger and joint bookrunner, and Credit Agricole Corporate and Investment Bank, HSBC Securities (USA) Inc., Mizuho Bank, Ltd. and Wells Fargo Securities, LLC, as syndication agents, joint lead arrangers and joint bookrunners. The Credit Agreement replaces the credit agreement dated September 11, 2013 and as amended (the "Old Credit Agreement") and, other than an increased aggregate amount that may be borrowed, an improvement in the consolidated leverage ratio covenant and a slightly more favorable commitment fee rate, has terms and conditions similar to that of the Old Credit Agreement. The Credit Agreement makes available to the Company and the Subsidiary Borrowers a committed five-year credit facility in an aggregate amount of $650 million (the "Facility Amount").

\*      \*      \*

The financial covenants provide for a maximum Consolidated Leverage Ratio of 3.75 to 1.0 and a minimum interest coverage ratio of 3.0 to 1.0 (defined as consolidated EBITDA divided by consolidated total interest expense). For purposes of the Credit Agreement, consolidated EBITDA represents earnings before interest, income taxes, depreciation and amortization, as adjusted to exclude unusual, non-recurring gains as well as non-cash charges and certain other items. As of September 28, 2019, and currently, the Company was in compliance with the financial covenants in the Credit Agreement.

Under the Credit Agreement and consistent with the Old Credit Agreement, the Guarantor unconditionally guarantees all obligations and liabilities of the Company and the Subsidiary Borrowers relating to the Credit Agreement, supported by a security interest in certain "Tupperware" trademarks and service marks. The Credit Agreement includes a trigger whereby the Company would be required to provide additional collateral and subsidiary guarantees if Moody's Investors Services, Inc. downgrades its existing ratings two notes or more or S&P Global Ratings downgrades its existing ratings one or more notches.

\*      \*      \*

At September 28, 2019, the Company had $406.1 million of unused lines of credit, including $324.9 million under the committed, secured Credit Agreement, and $81.2 million available under various uncommitted lines around the world.

33.    The above statements identified in ¶¶ 20-33 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (i) Tupperware lacked effective internal controls; (ii) accounting irregularities existed with respect to the Company's Fuller Mexico business; (iii) the foregoing issues would foreseeably necessitate an investigation that would cause Tupperware to be be unable to timely file its 2019 annual report; (iv) Tupperware would need relief from its $650 million Credit Agreement; (v) Tupperware provided overvalued EPS guidance; and (vi) as a result of the above, Defendants' public statements were materially false and/or misleading at all relevant times.

34.    The truth began to emerge on February 24, 2020, when the Company issued a press release announcing that the Company "will file a Form 12b-25 Notification of Late Filing with the Securities and Exchange Commission to provide a 15-calendar day extension within which to file its Form 10-K for the fiscal year ended December 28, 2019" and stating that:

> GAAP diluted E.P.S. is expected to be in the range of breakeven to $0.34 versus $3.11 in the prior year. The current year was negatively impacted by $40 million for the non-cash impairment of goodwill and intangible assets and $35 million of re-engineering costs
>
> The Fuller Mexico full-year 2019 negative impact on an adjusted* pre-tax basis is expected to be in the range of $19-21 million
>
> Impact of taxes on adjusted* E.P.S. is expected to be in the range of $1.66-$1.98 in 2019
>
> Adjusted* pre-tax return on sales is expected to be approximately 10% or 12% excluding the Fuller Mexico impact, versus 14% in the prior year
>
> Adjusted* diluted E.P.S. is expected to be $1.35-$1.70 versus $4.30 in the prior year, including $0.26 cents from foreign currency
>
> *        *        *
>
> The Company experienced continued execution challenges and unfavorable macro-economic trends most notably in its core markets of Brazil, China, and U.S. &

Canada. The impact on segment profit is expected to be approximately $83 million or $0.75 cents per share, excluding Fuller Mexico of $19-21 million.

The Company is conducting an investigation primarily into the accounting for accounts payable and accrued liabilities at its Fuller Mexico beauty business to determine the extent to which these matters may further impact results and to assess and enhance the effectiveness of internal controls at this business. This matter is $9-11 million of the total expected $19-21 million full-year impact on an adjusted* pre-tax basis. In addition, total impairments for Fuller Mexico are expected to be approximately $31 million. The total pre-tax impact for 2019 is approximately $50-$52 million.

"While challenges in Brazil, China, and the U.S. & Canada businesses persisted in the fourth quarter in line with our expectations, our preliminary results were further affected by financial reporting issues in Fuller Mexico. We are working rapidly to address these Fuller Mexico issues in order to finalize our 2019 results. We are also focused on facing the clear headwinds in our core markets and accelerating the pace at which we can achieve meaningful improvement in the business," said Chris O'Leary, the Company's Interim CEO.

\*          \*          \*

**Debt Covenant**

Based on the 2020 outlook, the Company is forecasting a need for relief concerning its existing leverage ratio covenant in its $650 million Credit Agreement dated March 29, 2019 (the "Credit Agreement"), to avoid a potential acceleration of the debt, which could have a material adverse impact on the Company. Approvals have been received, pending completion of final documentation, from participating banks to amend the maximum consolidated leverage (debt-to-EBITDA) in the Credit Agreement for the required relief. In connection with the amendment, the Company and certain of its subsidiaries will provide additional collateral and subsidiary guarantees.

35.     On this news, the Company's stock price fell $2.61 per share, or over 45.63%, to close at $3.11 per share on February 25, 2020.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Tupperware securities between January 30, 2019 and February 24, 2020, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants,

the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Tupperware's common shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class.  Millions of shares of Tupperware common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Tupperware or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)       whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Tupperware; and

c)       to what extent the members of the Class have sustained damages and the proper measure of damages.

41.       A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

42.       The market for Tupperware's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Tupperware's securities traded at artificially inflated prices during the Class Period.  Plaintiffs and other members of the Class purchased or otherwise acquired Tupperware's securities relying upon the integrity of the market price of the Company's securities and market information relating to Tupperware and have been damaged thereby.

43.       During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Tupperware's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Tupperware's business, operations, and prospects as alleged herein.

44. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Tupperware's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

45. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

46. During the Class Period, Plaintiffs and the Class purchased Tupperware's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

47. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Tupperware, their control over, and/or receipt and/or modification of Tupperware's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Tupperware, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

48.     The market for Tupperware's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Tupperware's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Tupperware's securities and market information relating to Tupperware, and have been damaged thereby.

49.     During the Class Period, the artificial inflation of Tupperware's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Tupperware's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Tupperware and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted

in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

50.    At all relevant times, the market for Tupperware's securities was an efficient market for the following reasons, among others:

a)    Tupperware shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

b)    As a regulated issuer, Tupperware filed periodic public reports with the SEC and/or the NYSE;

c)    Tupperware regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)    Tupperware was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

51.    As a result of the foregoing, the market for Tupperware's securities promptly digested current information regarding Tupperware from all publicly available sources and reflected such information in Tupperware's share price.  Under these circumstances, all purchasers of Tupperware's securities during the Class Period suffered similar injury through their purchase of Tupperware's securities at artificially inflated prices and a presumption of reliance applies.

52.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

53.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Tupperware who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

54.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Tupperware's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

56.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Tupperware's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Tupperware's financial well-being and prospects, as specified herein.

58.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Tupperware's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Tupperware and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

59.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

60.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Tupperware's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Tupperware's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Tupperware's securities during the Class Period at artificially high prices and were damaged thereby.

62.     At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Tupperware was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Tupperware securities,

or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

63.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

65.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.    Individual Defendants acted as controlling persons of Tupperware within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68.    As set forth above, Tupperware and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demands a trial by jury.

Dated: March 20, 2020

Respectfully submitted,

**SHEPHERD FINKELMAN
MILLER & SHAH, LLP**

*/s/ Jayne A. Goldstein*
Jayne A. Goldstein
Florida Bar No. 0144088
1625 N. Commerce Parkway, S. 320
Ft. Lauderdale, Florida 33326
Telephone: (954) 515-0123
jgoldstein@sfmslaw.com

*Liaison Counsel for Plaintiffs*

**POMERANTZ LLP (Trial Counsel)**
Jeremy A. Lieberman
(*pro hac vice application forthcoming*)
J. Alexander Hood II
(*pro hac vice application forthcoming*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP (Trial Counsel)**
Patrick V. Dahlstrom
(*pro hac vice application forthcoming*)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
pdahlstrom@pomlaw.com

*Counsel for Plaintiffs*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, _____Stuart Schreiber_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Tupperware Brands Corporation ("Tupperware" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Tupperware securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Tupperware securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Tupperware securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.


**Executed** _____**2/29/20**_____
                        **(Date)**


                                         _____
                                              **(Signature)**


                                         _____Stuart Schreiber_____
                                                **(Type or Print Name)**

**Tupperware Brands Corporation (TUP)**                                **Schreiber, Stuart**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 10/7/2019 | Purchase | 11.8671 | $15.6567 |
| 10/4/2019 | Purchase | 9.9166 | $18.4671 |
| 7/9/2019 | Purchase | 6.7640 | $26.8037 |
| 7/8/2019 | Purchase | 13.1745 | $33.9785 |
| 4/8/2019 | Purchase | 13.3918 | $32.7468 |
| 4/5/2019 | Purchase | 10.1913 | $42.3506 |

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, _____Karen Schreiber_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Tupperware Brands Corporation ("Tupperware" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Tupperware securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Tupperware securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Tupperware securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  My husband, Stuart Schreiber, (also separately a party to this action) has full power of attorney for me and shall be the primary point of contact associated with any actions in this matter.

8.   I declare under penalty of perjury that the foregoing is true and correct.


**Executed** _____**2/29/20**_____
                         **(Date)**


_____
                     **(Signature)**


_____Karen Schreiber_____
                 **(Type or Print Name)**

**Tupperware Brands Corporation (TUP)**                                              **Schreiber, Karen**

## List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 10/7/2019 | Purchase | 13.8452 | $15.6567 |
| 10/4/2019 | Purchase | 11.5692 | $18.4671 |
| 7/9/2019 | Purchase | 7.8914 | $26.8037 |
| 7/8/2019 | Purchase | 15.3703 | $33.9785 |
| 4/8/2019 | Purchase | 15.6238 | $32.7468 |
| 4/5/2019 | Purchase | 11.8900 | $42.3506 |